Elizabeth J. VALENTE et al., Plaintiffs,

v.

PEPSICO, INC., et al., Defendants.

Civ. A. No. 4537.

United States District Court, D. Delaware.

May 1, 1981.

Richard I. G. Jones, James L. Holzman and Michael J. Hanrahan of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for plaintiffs; Harold E. Kohn of Kohn, Savett, Marion & Graf, Philadelphia, Pa., Herbert E. Milstein and Glen DeValerio of Kohn, Milstein & Cohen, Washington, D. C., of counsel.

Richard J. Abrams of Richards, Layton & Finger, Wilmington, Del., for intervening plaintiff, James G. Ryan.

Alfred M. Isaacs of Flanzer & Isaacs, Wilmington, Del., for intervening plaintiffs, George Pope and Andrew Dimitriou.

Hugh L. Corroon and James F. Burnett of Potter, Anderson & Corroon, Wilmington, Del., for defendants; Arthur S. Friedman and Peter N. Wang of Friedman & Gass, New York City, of counsel.

William H. Sudell, Jr., and Thomas John Allingham, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for claimant Yale University.

Andrew B. Kirkpatrick, Jr., and Thomas John Allingham, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for claimant First Nat. Bank in Dallas; Ernest E. Figari, Jr., and Storrow Moss Gordon, of Hewett, Johnson, Swanson & Barbee, Dallas, Tex., of counsel.

Roderick R. McKelvie of Robinson, McKelvie & Geddes, Wilmington, Del., for claimant Kidder, Peabody & Co., Inc.

Jack B. Jacobs, of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for claimant Northwestern Nat. Bank of Minneapolis.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

Two major issues remain to be resolved in connection with the administration of this vexed settlement;[1] both concern attorneys' fees. Several individual members of the plaintiff class have petitioned the Court for reimbursement of legal expenses incurred in defending the validity of their claims against defendants' challenges. Also, class counsel contends that it is entitled to interest from the settlement fund on the $1,125,-000 attorneys' fee award the Court made in 1979. For the reasons set out hereinafter, the Court awards attorneys' fees and expenses only to those individual class members who were told that class counsel could not represent them, and declines to allocate interest to class counsel on the 1979 fee award.

### I. Fees and Costs for Class Members

Four members of the plaintiff class, First National Bank in Dallas, Kidder, Peabody & Co., Northwestern National Bank of Minneapolis, and Yale University, filed a petition with the Court on March 5, 1981, for reimbursement of legal fees and expenses incurred in connection with defending the validity of their claims against defendants'

---

1. The factual background of the case is set out in the Court's recent Opinion concerning disputed claims to the settlement fund, *Valente v. Pepsico, Inc.*, 89 F.R.D. 352 at 354–356 (D.Del. 1981).

challenges. *See* Dkts. 460, 461. The petitioners seek reimbursement from either the settlement fund or the fee awarded to class counsel. Their petition is opposed both by class counsel and defendants.

■ Petitioners offer several arguments in support of the petition. First, they contend that the Court should award them fees and expenses from the settlement fund, pursuant to the Court's authority under ¶ 5(a) of the Settlement Agreement, Dkt. 310, Ex. A at 5, on the ground that their legal arguments in defense of their claims' validity advanced the interests of the class as a whole. Class Counsel and petitioners differ as to whether petitioners contributed original and significant arguments concerning the legal issues arising from the claims challenges. It is enough for the Court's purposes that any contribution that petitioners made to the class was ancillary to their primary interest in persuading the Court to allow their individual claims. Because common legal issues were involved in the challenges to petitioners' claims, and the challenges to the claims of a number of other class members, petitioners' briefs did assist the Court to some extent in determining whether to allow the claims of other members of the class. However, such would generally be the case when a class member seeks individual legal representation in a class suit or settlement. The Court cannot be expected to apportion the relative benefit accruing to petitioners and the class as a result of petitioners' decision to retain separate counsel in connection with the adjudication of disputed claims. On the other hand, allowing reimbursement of petitioners' fees from the fund would deplete the fund, to the detriment of the other members of the class, and encourage class members to hire independent counsel in the future, thereby undermining the principle of class representation. *See, Alpine Pharmacy, Inc. v. Chas. Pfizer and Co., Inc.,* [1973–1] *Trade Cases* (CCH) ¶ 74,350 at 93,641 (S.D.N.Y.1972). The Court concludes, therefore, that in cases where individual class members voluntarily retain independent counsel, reimbursement of their legal expenses from the settlement fund is not warranted, even if some benefit accrues to the class as a result.

However, petitioners contend in this case that they did not retain separate counsel of their own volition, but did so on the advice of class counsel. According to affidavits submitted to the Court, class counsel contacted two of the petitioners, Northwestern National Bank and Yale University, in April 1980, and informed them that class counsel "could not" represent them in connection with the challenge to their claims. *See* Dkts. 461, 474. At about the same time, class counsel contacted the First National Bank in Dallas and "suggested that the Bank consider" retaining independent counsel, *see* Dkt. 471 at 2. Though it filed no affidavits, Kidder, Peabody states in its brief that it too was contacted and "advised" by class counsel to retain its own counsel. *See* Dkt. 467 at 4. One of the affidavits submitted on behalf of Northwestern National Bank avers that class counsel mentioned a "conflict of interest," *see* Dkt. 461 at Ex. B; a First National Bank affidavit states that class counsel mentioned "a possible conflict," *see* Dkt. 472 at 2.

Class counsel, for its part, states in its brief that it "called each of the Big Four and advised them that they should consider retaining their own counsel." Dkt. 464 at 6. Class counsel did not file any affidavits in support of its contention. In a letter reply to petitioners' briefs, class counsel notes, without denying, the claim by Northwestern National Bank and Yale that class counsel would not represent them:

Northwestern and Yale allege that class counsel flatly refused to represent them, mentioning possible conflicts of interest. Class counsel do not recall whether the phrase "conflict of interest" was mentioned in the phone conversations with Northwestern, Yale or First National.

Letter to the Court from Richard I.G. Jones (April 7, 1981) at 2.

On this record, the Court finds that Northwestern and Yale did not voluntarily retain their own counsel. While there is a

close question as to First National Bank, the Court finds that class counsel should not be deemed to have refused to represent them, because the Bank decided to hire its own counsel without making further inquiries of class counsel as to the nature of the "possible conflict." As to Kidder, Peabody, the record indicates that its decision to obtain separate counsel was voluntary.

The law is clear beyond question that class counsel have a continuing duty to class members to represent their interests vigorously in all phases of a class suit, including the administration of a settlement. *See, e. g.,* 2 H. Newberg, *Class Actions* § 2705 (1977). While no one, including the Court, foresaw the extent of the difficulties that have attended the claims process, class counsel had no choice but to continue in its vigorous representation of the class members, which it admirably did save in the case of Northwestern National Bank and Yale. Indeed, in their petition for an award of fees, class counsel explicitly stated that they anticipated devoting substantial time to administering the settlement, Dkt. 319 at 10 n. **. The Court's generous fee award of $1.125 million is predicated, in part, on that assumption. *See* Dkt. 333 at 3. While the petitioners here had large claims at stake and had, as a result, been noticed for deposition by defendants, there is no indication that class counsel "advised" them to retain their own counsel because they were making demands as class members that class counsel considered unreasonable.

In view of the equities of the case, and class counsel's unwillingness to represent these members of the class, the Court holds that Northwestern National Bank and Yale should be reimbursed, from the fee awarded class counsel, for all reasonable legal fees incurred in connection with this case since April, 1980. These fees amount to $12,035 and $13,045, respectively.[2] Because the other two petitioners voluntarily retained their own counsel, they are not entitled to reimbursement.

With regard to legal expenses, the Court holds that Northwestern National Bank and Yale should be reimbursed as well. Though such expenses would generally be paid from the settlement fund, *see* Settlement Agreement ¶ 5(b), Dkt. 310, Ex. A at 5, there is no justification for imposing the burden of these expenses on the other class members and defendants (through their reversionary interest). Class counsel's refusal to represent these two petitioners resulted in a duplication of effort and expenses in a number of instances. The most appropriate remedy is therefore to reimburse these petitioners for their out-of-pocket expenses, totalling $2488.56 for Northwestern National Bank, $2049.46 for Yale, from the fee awarded class counsel.

II. *Interest on Fee Award to Class Counsel*

As to whether, under the Settlement Agreement, class counsel is entitled to interest on the attorneys' fee awarded by the Court in 1979, class counsel contends that a "fair" reading of the Agreement requires that interest on the settlement fund be allocated according to the allocation of principal. Defendants, on the other hand, urge that that approach is inconsistent with the Agreement's provisions concerning distribution of the fund.

The Court did not address this issue in its Opinion of January 27, 1981. Nor was the interest question specifically addressed in class counsel's petition for fees or the Court's Order awarding fees. The parties had agreed that defendants would not oppose an application for fees not exceeding 25% of the $4.5 million settlement fund. Settlement Agreement ¶ 8, Dkt. 310, Ex. A at 6. Class counsel filed a petition for a fee of $1.125 million in April 1979, *see* Dkt. 319. To the extent that interest is mentioned in the petition, the references suggest that class counsel did not anticipate receiving interest on the fee award. For example,

---

**2.** These expenses represent payment only for hours actually spent on this case by counsel, billed at their usual hourly rates. The Court deems them to be fair and reasonable. *Cf.,*

*Lindy Brothers Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 540 F.2d 102 (3d Cir. 1976) (basis for fee award to class counsel).

the petition states, "a request for counsel fees amounting to approximately 25% of the maximum recovery, *not including interest to be earned on the Settlement Fund*, is eminently fair, reasonable and justified." Dkt. 319 at 19 (emphasis added). Elsewhere, the petition notes, "[h]ere the amount requested, based on Petitioners' recovery for the class, excluding interest is 25%. Including interest, of course, it would be less than 25%. . . ." *Id.* at 33. The Court's Order of June 4, 1979, awarded class counsel the requested fee of $1.125 million, and made no mention of interest. *See* Dkt. 333.

Class counsel seek to reconcile those statements with their present position on the basis that they anticipated that the attorneys' fee would be paid out of the fund prior to resolution of the claims' challenges. However, class counsel indicates nothing in the history of this case or in the Settlement Agreement that would justify such an expectation.

Class counsel's interest here is at least potentially, if not actually, in conflict with the interests of the class. Under defendants' reading of the Settlement Agreement's distribution formula, a reading the Court believes to be more faithful than class counsel's, if the Court were to allocate interest to class counsel on the fee award, the distribution to class members would be reduced by $133,575. *See* Letter to the Court from James F. Burnett (April 9, 1981) at Counter-Exhibit A (hereinafter "Burnett letter"). The Court notes further that if interest were allocated to class counsel, the distribution to class counsel would be more than half the size of the actual distribution to the members of the class, rather than less than a quarter the size of the class's recovery, the figure projected in counsel's fee petition, *supra*. To award interest on the fee under these circumstances would be to give class counsel "an unintended and unjustified windfall." *Percodani v. Riker-Maxson Corp.*, [1971–1972] *Fed.Sec.L.Rep.* (CCH) ¶ 93,455 at 92,252 (S.D.N.Y.1972).

III. *Remaining Issues*

As requested by class counsel in its final brief, *see* Dkt. 462 at 18, the Court authorizes payment of additional settlement costs in the amount of $16,907.52 from the settlement fund and $31,973.73 from the cost fund.

In the Court's view, fairness requires that interest be imputed on the funds returned to PepsiCo pursuant to. this Court's Order, *see* Dkt. 373, for the period they were in PepsiCo's possession, at the rate they would have earned had they remained in the possession of the Court's agent, the Delaware Trust Company. In accordance with the Settlement Agreement and this Opinion, the Court subscribes to the calculation of the fund's distribution as set out in the Exhibit to the Burnett letter, *supra*, modified so as to reflect the most recent revisions in Appendix A to the Court's Order.